Wanamaker, J.,
concurring. I heartily concur in the judgment in this case.
The nature and novelty of the case, as well as its far-reaching importance .to the parties and the public, suggest some further statement of the grounds of my concurrence.
Our national constitution declares that one of the primary and paramount purposes of our national government is “to establish justice.”
Our Ohio Constitution of 1851, still in force, likewise declares for “justice administered without denial or delay.”
*301 Courts, by their powers and procedure, are especially charged with this public duty.
It is admitted by all the parties hereto that there is no statute in Ohio specially authorizing the remedy ordered in the judgments below.
The Valentine Anti-Trust law denounces all combinations in restraint of trade, but authorizes no such remedy as is invoked in this case. The Smith Cold Storage act denounces storage of food products for a period longer than six months, but authorizes no such remedy as is invoked in this case.
These statutes, however, are very significant in arriving at the public policy of our law as to the matters in controversy. The very things complained of in the petition are denounced and prohibited in substance by the statutes, especially the Smith law. The law merely provides a criminal penalty for its violation, but provides nothing as to the foods or merchandise so stored — as to the disposition of the products thus wrongfully withheld from the markets and the public.
The law, therefore, clearly falls short of an adequate and complete remedy to place this food upon the markets.
Is this such a case in equity as to warrant first, the jurisdiction, and second, the order of sale heretofore made?
That there is no precedent for the judgment below, either in law, or equity, among the decided cases brought to the cotírt’s attention, is doubtless true. But is precedent indispensable? Who furnished the precedent for the precedent ?
*302 Precedents are worth just as much, and no more, than they weigh in reason and justice. They are worth just as much, and no more, than their recognition of fundamental facts and their natural justice to all parties concerned in the particular case. If it were not so, precedent would be the natural and necessary enemy of all progress, and while the social, industrial and commercial conditions of any country were in a state of natural and necessary growth and evolutioji the fixed strict law of unchanging precedent would, like a strait-jacket, be an entire misfit, wholly unadaptable to the conditions and the situation in any modern case at bar.
Judge Ranney, that veteran of Ohio jurisprudence whom we all delight to honor, in C., C. & C. Rd. Co. v. Keary, 3 Ohio St., 201, makes some very pertinent observations at page 205:
“To it [the common law of England] we constantly resort, when the positive law is silent or insufficient. Built up, as it has been, from the experience of ages, and constantly adapting itself to the business and relations of men in society, we seldom fail to find principles which, if carried to legitimate results, are not altogether sufficient to settle every controversy. If no precedent is found for a remedy to enforce an acknowledged right, one of its own cherished principles requires us to adapt one to the exigency, and to make good the maxim, that there is no legal right, without a legal remedy.”
This is not true merely because Judge Ranney so said, but Judge Ranney so said because it is so evidently true and just.
*303 Jurisdiction in equity is difficult to define, not because it is inherently vague and indefinite, but because of its nature as a supplement to the law. For want of a, better definition it may well be said that “Equity is that portion of remedial justice which was formerly administered in England by the high court of chancery by virtue of its extraordinary jurisdiction as extended, limited, and modified by statute, and adapted to our conditions by judicial construction.” 16 Cyc., 23.
Equity jurisdiction originally rested solely in the crown of England. Later it was transferred to the chancellor of the crown and became known as a chancery court. The first question addressed to such court was, has there been a substantial injury, a wrong committed against some person? Second, is the remedy provided by the law “full, adequate and complete” to do justice?
If such wrong were found to have been committed against the manifest rights of any person, and that the remedy provided by law was not “full, adequate and complete,” then the chancellor took jurisdiction, determined all questions, rendered all necessary judgments and made all necessary orders to provide such remedy, such redress. The conscience of the chancellor was his guide in determining his jurisdiction, and also in providing and enforcing the appropriate remedy.
Most of the jurisdiction in equity grew out of the universality, strictness, rigidity, of the law as applied by courts of law. Courts of law had too long and too strenuously held to the doctrine of prece *304 dent, stare decisis, and too often if there was no precedent, there could be no remedy.
The court of equity was not so limited, but being a court of conscience, rules of reason and righteousness were applied to the facts of the particular case.
Through centuries of the exercise of this jurisdiction and the application of appropriate remedies there has grown up a system of rules, and maxims that have become a part of the fundamental rules and principles of our equity jurisprudence.
One of the maxims most frequently applied is this: “Equity will not suffer a wrong to be without a remedy.”
The first question, therefore, to be determined before this maxim can have any application is, has. a wrong been committed as shown by the pleadings and proof in the case?
The petition alleges in substance that a statute of Ohio, known as the Smith Cold Storage Law, was violated by reason of the fact that certain pork loins were continuously in cold storage for a period of more than six months, contrary to such statute.
The defendant, The Fairmont Creamery Company, the bailee in this case, admits the storage of the property in question, that The Columbus Packing Company “at the time stated in the petition delivered to this defendant, at its cold storage warehouse in Columbus, Ohio, certain carcasses of pork or parts thereof; that this defendant received and stored the same for hire, and that the same or part thereof is now in possession of this defendant,” etc. So that so far as the bailee, The Fairmont *305 Creamery Company, is concerned, the allegations of the petition in this behalf must be taken as true.
As to the owner of the pork loins, The Columbus Packing Company, it generally denies the allegations of the petition as to the violation of the law, but does admit the following, which is set forth in. its answer. It alleges that “it has not sold, offered or exposed for sale any of said pork products after the expiration of said six months during which said pork products have been held in said cold storage warehouse
The answer further says:
“Defendant further says that it has tried by its officers and agents in every possible way to dispose of the same at a fair market value, but that owing to the quantity of pork loins thus accruing, as hereinbefore described, in the hands of said defendant, it was unable to sell or dispose of the same within the time limit thus mentioned in said act of the General Assembly.”
If these two allegations mean anything at all, if simple English is understandable by layman and lawyer, here is a clear and conclusive admission by The Columbus Packing Company that their pork loins were kept in cold storage by The Fairmont Creamery Company for a period of more than six months, which is the limit fixed by the Smith law.
Now, the court below found this to be a violation of the statute known as the Smith law and proceeded to make an order of sale.
In view of these admissions it hardly seems credible for the defendant to contend that it had *306 no trial. It would be equally as consistent for one accused of crime to come into court, plead guilty and then offer mitigating circumstances. in evidence, and after sentence insist that he had not had trial.
Let us remember that the power of the general assembly to pass the act in question under its police power has not been challenged. The public policy denounced by the Smith law has not been challenged as an invasion of the lawful liberty of contract, and, therefore, when the court of common pleas found that the law had been violated in the respect aforesaid, it would have been utter folly to have wasted any further time or labor in a so-called trial.
The court below did what it ought to have done upon the conceded essential facts of the pleadings. It determined that a wrong had been done and proceeded to provide a remedy suitable to said wrong.
One of the greatest cases ever tried in America was the famous case of the Colonists against Great Britain, in which the opinion of the court, the Congress of the United States, was drawn by Thomas Jefferson in 1776. There was no precedent, at least Jefferson cited none, to sustain the judgment of that court. But Jefferson did say some things that were pertinent. He said:
“We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men,” etc.
*307 These self-evident truths, these self-evident principles of government are available now as they were available then. The right to life, liberty and the pursuit of happiness are as unalienable now as they were then, and any course of conduct that tends to reduce or jeopardize that liberty, especially when denounced by a statute, is a wrong of which both law and equity should take cognizance.
If it be the paramount purpose of government “to secure these rights,” the unalienable rights of man, then all the branches of the government, particularly our courts, are charged with the imperative duty of promoting and protecting those unalienable rights.
Jefferson may have been short on precedent in writing that opinion, but he was long on principle, a principle that has become the very foundation of our American system of government.
I am quite aware that in the adjudicated cases of equity jurisprudence, the wrong or injury was suffered by some individual or individuals, a few of them as a rule, and not the public at large. But I do not understand that an injury to five million people resulting from the unlawful hoarding of foods is any less an injury under our Bill of Rights than an injury to one, two or three individuals. I do not understand the Ohio Bill of Rights to have any numerical limitation, especially I may say that I do not understand it to mean that the greater the number who are injured, the less the right to a remedy.
Section 16 of the Bill of Rights, among other things, declares: “That every person, for an in *308 jury done him in his land, goods, person, or reputation, shall have remedy by due course of law.”
If that injury be done to five million of people, as a body, is it any less an injury and is there any less right by the Constitution of Ohio to a remedy by due process of law ?
It may be said that there is equal right as to property, equal right as to liberty of contract with reference to property. I do not so read the Constitution of Ohio.
I have already referred to the Declaration of Independence and it is significant that in this great •Magna Charta of human rights, the word “property” is nowhere found. Neither is the word “property” found in the original constitution of the Union. It does appear in the early constitutions of Ohio, and in the Constitution of 1851, now in force, this language appears: “Private property shall ever be held inviolate, but subservient to the public welfare.” Section 19 of the Bill of Rights.
This word “subservient” is a strong, significant word. It is composed of two parts “sub” and “servient.” We use the word “servient” in law as something charged with a burden or servitude, so that with the prefix “sub” you have a double charge upon private property, in order that it shall serve the public welfare. .
But there is in this case nothing of confiscation. The property of the Packing Company is neither destroyed, confiscated nor appropriated by the public, but the order of the court below is simply to sell it, ás the law required them to sell it, at a reasonable market price, and the proceeds thereof not *309 to go to Franklin county, or the state, but to the Packing Company.
This brings us to another maxim of equity: Equity regards as done that which ought to be done; or put in another form, Equity will require the parties to do what in law or good conscience they should have done.
This last maxim was under review by this court in the case of Klaustermeyer v. Cleveland Trust Co., 89 Ohio St., 142, decided in 1913, and I refer to the case for a discussion of this maxim and its application to the case at bar, especially because when that opinion was written conditions were more normal than they are now, though the principles of justice and equity were just as obligatory then and no more than they are now.
In the opinion in that case, which I had the honor to prepare, it was said at page 154:
“It is not improbable that there are no precedents for this holding. Indeed, there are many cases that seem to support the contrary view. But is it not better to regard a principle that does regard equity rather than a precedent that denies equity ?
“Equity is after all only a natural and necessary evolution of principle and policy to secure jústice where the law obviously fails.
“If the boundaries of equity are not broad enough to furnish the relief, it is manifest that the boundaries should be extended, as courts heretofore have not hesitated to do. If there be no precedent for this judgment, it is time that a precedent were made.
*310 “There are too many hair-splitting distinctions in phrases where there is no honest difference in principle. What is a rule of equity worth that will not protect the equities of a case and the good conscience of the parties. ?
“If the maxim ‘Equity will presume to have been done what ought to have been done under the contract and in good conscience’ — if this maxim were not designed to meet just such cases under our com stitution and our laws as this one, what, pray, is its purpose? When jurisprudence becomes synonymous with justice, courts will be returned to that public confidence so necessary to stable and successful government.”
Something has been said about the pleadings of this case falling short of the allegation as to the Valentine Anti-Trust law, particularly when the affidavits offered in evidence are'considered.
It is unnecessary for this court to determine whether or not both the Valentine Anti-Trust law and the Smith law have been violated under the-pleadings and proof of this case. It is quite sufficient if the public policy announced in one of these statutes has been defied, in order to find that a wrong has been committed.
As before suggested, that wrong clearly appears from the pleadings as to the Smith Cold Storage law, and if it were necessary so to do, the court should hesitate a long while before holding that a contract existing between two parties to hoard food, to withhold it from the market for a period longer than allowed by law, was not a contract, a combination, in restraint of trade. Surely such food is for *311 the time impounded, such food is for the time kept from the public markets, and no other reasonable or practical interpretation can be found for such acts.
True, the amount of food involved in any given case may be small, but the world is made up of littles, and the really important matter here is to decide the question touching similar instances of cold storage throughout the state, where in the aggregate millions of tons of food of various kinds are being stored.
It has been urged that the purpose of the Smith law is to furnish cold storage so as to preserve food, not hoard it. The intention of a statute may be ascertained by considering the natural and probable consequences that follow from the act.
The presumption naturally arises that the act was passed not merely to prevent hoarding, cornering of foods, but likewise that the wholesome palatable quality of foods could be better preserved by fixing a reasonable time within which they must be put upon the market.
But we are not concerned here with the purpose of the act, but only with its manifest violation. If, as Judge Ranney has said in the case cited, that even the law is “built up as it has been from the experience of ages and constantly adapting itself to the business and relations of men in society,” then clearly the same attributes must be applied to a court of equity, that has its very foundations in the shortages, defects, imperfections of the law, where a remedy is unknown to the law, in order to *312 redress an injury that is known to the law and to the common experience of men.
No one, since the days of Lord Coke, who made a wonderful fight against the English courts of equity nearly three centuries ago, has doubted the right of a court of equity to extend its jurisdiction to meet modern day methods of jeopardizing the public welfare. It will neither harm the law nor lessen public confidence in courts to humanize their jurisdiction and their justice.
We hear much of profiteering these days. It is significant during- the last five years that America has made more millionaires than in any other ten years of her history, and that, too, in a period of five years when our many millions of men, women and children have been called upon to render a service and to make a sacrifice to conduct a world war greater than at any time for a half a century.. There is too much of our patriotism spelled with a “y”.
The public welfare must be paramount to private wealth, as declared in our constitution, and courts must not hesitate to extend the jurisdiction and the process of their equity powers to promoting and safeguarding the public rights of “life, liberty and the pursuit of happiness.”
The charters of these two defendant corporations were grants of corporate power from the state obedient to the law of the state.
, Shall the creatures of our law now be above the law? Shall the exemption of liability by corporations be superior to enforcement of the law by the courts ?
*313 To do otherwise Than to affirm the judgments below would put this court in a most pitiable plight before the people of Ohio.
There is crying need for more respect for law. Let the state begin with its own creatures, the corporations, no less than its sovereign citizens. Let us realize the great Hooker’s conception in “The least as feeling her care, the greatest as not exempt from her power.”